# Downer *against* Downer.

A testator devised to his son a part of his real estate, subject to the payment of a certain sum, and directed his executors to sell all the rest of his real estate and divide the proceeds amongst his children. The son refused to accept the devise upon the terms stipulated; but, treating that part of the estate devised to him as a lapsed devise, he petitioned the orphans' court for a writ of partition and valuation, which was regularly proceeded in; he took the same at the valuation; it was confirmed to him, and he went into possession. The executors, treating this proceeding as illegal, proceeded under the powers contained in the will and sold the property to four other of the heirs, who brought ejectment for it: *Held,* that the proceeding of the orphans' court was void, because there was no intestacy: and the proceeding of the executors was void, because they had no power under the will to sell this property: and that the proper remedy was a proceeding in the orphans' court, under the act of the 24th of February 1834, to compel the payment of the legacies charged upon the land as devised, and thus sell it for the benefit of the legatees.

ERROR to the special court of common pleas of *Fayette* county.

Hiram Downer, Ruth Downer, Sarah Downer and Rachel Downer against Levi Downer. Ejectment for a lot of ground in Union

[Downer v. Downer.]

town, called the "Tan Yard Lot." Jonathan Downer, the father of the parties died seised of the lot in controversy, having first made his will, the material parts of which are as follows:

"Thirdly, I give and devise unto my son, the said Levi Downer, the lot of ground in Union town, commonly called the Tan Yard Lot, containing about one acre and a quarter, with the appurtenances, and for the proper use and behoof of him, his heirs and assigns forever. Provided, however, that he shall pay over to my executors for the benefit of the legatees, hereafter mentioned, the sum of 3500 dollars, in four payments, viz: 500 dollars within three calendar months after my decease, and 1000 dollars yearly afterwards, until the whole is paid. I also give him all my interest in the stock in the tan yard aforesaid, which shall be in full of all demands against my estate."

"Fifthly, It is my will that my executors, as soon after my decease as convenient, expose to sale the whole of my real estate not otherwise disposed of in this my will, and divide the proceeds thereof in the following manner, after all my debts and legacies have been paid, viz: To my daughter, Ann Beeson, one-seventh part; to my daughter, Elizabeth Allen, one-seventh part; to my daughter, Drusilla West, one-seventh part; to my daughter, Ruth Downer, one-seventh part; to my daughter, Sarah Downer, one-seventh part; to my son, Springer Jonathan Downer, one-seventh part; to my daughter, Rachel Downer, one-seventh part."

Levi Downer, the devisee, refused to accept the devise upon the terms mentioned in the will, of which he gave notice to the executors and the legatees in writing, dated the 5th of September 1833, In March 1834, the said Levi Downer presented a petition for a writ of partition and valuation of the said lot of ground and the other parts of the real estate of the deceased, which was awarded by the court, and the inquest returned that the estate would accommodate three of the heirs, and they valued each one, and the said Levi Downer, as the eldest son, came into court upon the return thereof, and took the Tan Yard Lot at the valuation, and entered into recognisances for the payment of the shares of the other heirs, and went into possession. The executors, treating this as an illegal proceeding, advertised the said "Tan Yard Lot" for sale, on the 15th of December 1834, and sold the same to the plaintiffs and conveyed it to them by deed, dated the 2d of June 1835. Whereupon they brought this ejectment.

The court below, (Grier, president,) was of opinion that the plaintiffs were not entitled to recover.

*Howell* and *Coulter*, for plaintiffs in error.
*Veech* and *Dawson*, for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—The testator devised to his son, Levi Downer, the

IX.—F*

defendant, the premises in dispute, to him, his heirs and assigns forever: provided, however, that he shall pay over to his executors, for the benefit of the legatees thereafter mentioned, the sum of 3500 dollars, in four payments: viz. 500 dollars within three calendar months after his decease, and 1000 dollars yearly afterwards, until the whole was paid. This is, most clearly, a conditional estate, for where land is granted to a person "on condition," or "provided always," or "if it shall so happen," or so "that he pay to another a specific sum," within a specified time, it vests in him a conditional estate, and if he does not punctually make payment of the money, his estate has become voidable by entry. *Co. Litt.* 303; Wheeler *v.* Walker, 2 *Conn. Rep.* 201. The devisee having refused to pay or accept the devise, according to the authority of the case of Wheeler *v.* Walker, it reverted to the heirs of the devisor, who had a right to enter, for the condition broken and bring suit by ejectment for the recovery of the land. In the case cited, the question was, whether it was a devise of an estate to the son, in trust to pay a certain sum to the widow and a certain sum to each of the daughters, within a specified time, or whether it was a conditional estate. The court held it to be a conditional estate, and as such the action by ejectment by the heirs would lie to recover the possession. Whereas, if it had been a trust, as was contended, the remedy would have been only in chancery. It is not to be understood the court decided that even in the case of a conditional devise, the daughters might not enforce payment of the money payable to them by application to a court of chancery. Nor do I understand them to intimate, but directly the contrary, that the recovery of the heirs enures to their sole and exclusive benefit, divested of the lien of the money ordered to be paid by the testator to his widow and daughters. It would be unreasonable and unjust to hold that the refusal of the devisee to accept, or his subsequent failure to pay, could operate so injuriously to their rights. But this would seem to be the effect of the decision of the learned judge who tried this cause, for if the devisee died intestate, so far as this property is concerned, it would seem to follow that the proceeds, or the land itself, must be equally divided among all the heirs of the testator, to the exclusion of the rights of those members of the family to whom this money is bequeathed. This construction would undoubtedly defeat the intention of the testator, which is the cardinal rule. The court consider this as a lapsed devise, but a lapsed devise is where the devisee dies after the making of the will and before the testator. But here the devisee is still alive, and the estate immediately vested, upon the death of the testator, as a conditional fee simple. Hayden *v.* Stoughton, 5 *Pick. Rep.* 533. This was a condition subsequent, and the estate vested immediately in virtue of the devise. The fee does not rest in abeyance until the devisee accepts the devise, nor until he pays the money. Whether a person dies testate or intestate must be determined at the death

[Downer v. Downer.]

of the testator, and cannot rest on matters of subsequent occurrence. If this be so, the question is, what power had the executors to sell? Their power by the will only extends to the sale of such real estate as was not otherwise disposed of by the testator. From this it necessarily results that the sale to the plaintiffs by the executors is void, and that the title of the defendant, derived from the proceedings of the orphans' court, is also void.

It at one time occurred to us, on the authority of Wheeler *v.* Walker, 2 *Conn. Rep.* 201, that this suit might be supported by the plaintiffs, as the heirs of the testator. And this is so at common law; but since the passage of the act the 24th of February, 1834, which gives a remedy to the legatee, the remedy by ejectment is taken away, as it would be in the teeth of another act, which declares, that in all cases where a remedy is provided, or duty enjoined, or any thing directed to be done, by any act or acts of this commonwealth, the direction of said acts shall be strictly pursued, &c. The act of the 24th February, 1834, enacts, that "when a legacy is or shall be hereafter charged upon or payable out of real estate, it shall be lawful for the legatee to apply by bill or petition to the orphans' court having jurisdiction of the accounts of the executor of the will by which such legacy was bequeathed; whereupon such court, having caused due notice to be given to such executor, and to the devisee or heirs, as the case may be, of the real estate charged with such legacy, and to such other person interested in the estate as justice may require, may proceed, according to equity, to make such decree or order touching the payment of the legacy out of such real estate as may be requisite and just. Although the interest which the plaintiffs have under the devise is not technically a gift, or legacy, yet it may be considered an interest payable out of the real estate devised. The land is the fund to which the beneficiaries must look for the payment of the pecuniary bequest to them. They have no personal action against the devisee, he having refused to accept the devise, and unless the fund is made available to them, they are without remedy. This is a remedial act, and it would impair its usefulness to give it a narrow construction. The act provides for calling all the parties in interest before the court, who have power in the premises to do all a court of chancery could do, and under their plastic hands to administer justice in a most complete, and ample manner. In the case at bar they may order the property to be sold and may distribute the proceeds, paying in the first place the pecuniary bequest to the legatees, and if any thing should remain, distributing the surplus to the heirs of the devisor. Cases may arise where a devisee may refuse to accept a devise of greater value than the money charged upon it. If such a case should occur it would be but equitable that it should enure to the benefit of all the heirs and not exclusively to the legatees.

Judgment affirmed.