## Walls *versus* Stewart.

1. A testator devised to his son Eli, his heirs and assigns for ever, two tracts of land, *subject nevertheless to, and charged and chargeable with* the payment of six hundred dollars, to certain of the children of his son Joseph, to be paid to them or the survivors, share and share alike, viz: "one-half of the said sum to be paid one year after his decease, and the other half two years after his decease, which sum of six hundred I do hereby bequeath to my said grand-children, to be paid them as above stated and directed, and I do hereby charge the payment of the same on the tracts or parcels of land herein and hereby devised to my said son Eli, his heirs and assigns."

After the execution of his will, the testator sold the devised lands to his son James for part cash and the major part of the purchase-money in payments, which did not become due till after the testator's death. He devised to others of his children and grand-children pecuniary legacies; and he further directed that after the legacies and debts were paid, the balance of his estate should be equally divided amongst all his children, and the children of any that are deceased, share and share alike: *Held*, that as the legacy charged on the land devised to Eli, was to be paid by him as devisee in respect of the devise, and as a means of distribution among the testator's children, the land being the sole source of payment, the sale of the land by the testator effected an ademption of the legacy.

2. If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is to be considered *demonstrative*, and the legatee will not be disappointed, though the fund wholly fail. But where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it, as to show an intent to burden that object alone with the payment, it is esteemed *specific*, and consequently liable to be adeemed by the alienation or destruction of the object. In such matters, the *intention* of the testator is principally to be ascertained; and it is necessary, in order to render a legacy specific, that the intention so to make it, clearly appear. Per BELL, J. See this opinion as to specific and demonstrative legacies.

ERROR to the Common Pleas of *Huntingdon county*.

John Walls, being the owner of three farms, made his will on the 13th day of July 1844, wherein and whereby he devised one of these farms to his son *Eli*, his heirs and assigns for ever; subject nevertheless to, and charged and chargeable with a legacy of $600 to the children of *Joseph* Walls, the defendants in error. On the 27th of May 1847, the said John Walls, being still in full life, agreed to sell to his son *James* Walls, for the sum of $3000, the farm he had previously devised to Eli Walls, and upon which the legacy of $600 to defendants in error was charged by the will of the said John Walls as aforesaid; and on the 16th day of August, 1847, the said John Walls and wife, executed their deed for the land aforesaid to James Walls in fee simple. John Walls died the 17th day of July 1848, and his will, made as aforesaid on the 13th of July 1844, was duly proven on the 30th of July 1848, and same day letters testamentary were granted to the defendants below.

This amicable action, which was in the form of a case stated, was by the children of *Joseph* Walls, the defendants in error, to

recover from the executors of the testator, John Walls, deceased, plaintiffs in error, the $600 legacy, charged on the devise to Eli Walls by the will of their grandfather, John Walls, as aforesaid; who, after making his will containing said devise to Eli and this legacy of $600 charged thereupon, sold and conveyed to James Walls the lands so as aforesaid devised to Eli, and upon which the legacy in controversy in this case was charged by his will.

The case stated was as follows:—

J. Sewall Stewart, Guardian of Isaac Walls, Margaret Walls, Susannah Walls, and George Walls, *vs.* James Walls and Rebecca Walls, executors of John Walls, deceased. In the Court of Common Pleas of Huntingdon county, No. 70, August term 1850. Amicable action of debt for a legacy under the will of John Walls, deceased, late of West township; and case stated therein for the opinion of the court.

On the thirteenth day of July, A. D. eighteen hundred and forty-four, John Walls made and executed his last will and testament, and died on the seventeenth day of July, A. D. eighteen hundred and forty-eight, leaving as executors thereof his son James Walls, and his daughter Rebecca Walls, which said will was duly proven in the register's office of Huntingdon county, on the thirtieth day of July, A. D. eighteen hundred and forty-eight, and letters testamentary granted to said executors. The said testator, in his said will, among other things, bequeathed to his grand-children, Isaac, Margaret, Susannah, and George Walls, children of his son Joseph Walls, the sum of six hundred dollars, the one-half thereof to be paid in one year after his decease, and the remaining half in two years thereafter, by virtue of the following clause, *pro ut* said will:—

"Thirdly.—To my son Eli Walls I do give and devise all that farm, plantation, or tract of land, on which he now lives, as surveyed and divided off and its boundaries designated by William Reed, Esq., the 10th June 1831, containing seventy-eight acres and eighty-five perches and allowance, &c., and also thirty-three acres and thirty-nine perches of woodland, part of a larger tract surveyed on a warrant in the name of George Wilson, the said part being surveyed off at the same time, and designed by me to belong to the above-mentioned tract or parcel of farm land; which two tracts or parcels of land I do give and devise to my said son Eli, his heirs and assigns for ever; *subject nevertheless to, and charged and chargeable with* the payment of six hundred dollars to Isaac, Margaret, Susannah, and George Walls, children of my son *Joseph* Walls, to be paid to them or the survivor or survivors of them, (if any of them should die without issue before the six hundred dollars be paid,) share and share alike, as follows, that is to say, one-half of the said sum to be paid one year after my decease, and the other half two years after my decease; which sum of six hundred dollars *I do hereby*

[Walls *v.* Stewart.]

*bequeath* to my said grand-children, *to be paid them as above stated and directed,* and I do hereby charge the payment of the same on the tracts or parcels of land herein and hereby devised to my said son Eli, his heirs and assigns."

The whole of which said will is made part of this case stated.

The said testator, by articles of agreement, dated the twenty-ninth day of May, A. D. eighteen hundred and forty-seven, (*pro ut* the said articles,) agreed to sell and convey all the lands mentioned and described in the above devise to his son Eli, to his son James Walls, for the sum of three thousand dollars, payable as follows, to wit:

| $1000.00 | on the first of April 1848. |
|---|---|
| 333.33⅓ | " 1849. |
| 333.33⅓ | " 1850. |
| 333.33⅓ | " 1851. |
| 333.33⅓ | " 1852. |
| 333.33⅓ | " 1853. |
| 333.33⅓ | " 1854. |

To be secured by bond and mortgage; the deed to be made on or before the first day of April, eighteen hundred and forty-eight. In pursuance of the said agreement, the said testator and Susan his wife, on the sixteenth day of August, eighteen hundred and forty-seven, made and executed their deed of conveyance for the lands mentioned in the said article of agreement, (*pro ut* the said deed, being the same lands devised to Eli Walls, by the said testator in his will,) to their son James Walls, his heirs and assigns for ever, the said James Walls having paid and secured to be paid the purchase-money therefor. The whole of which said articles of agreement and deed are made part of this case.

The inventory returned by the said executors into the register's office of Huntingdon county, shows a personal estate amounting to $6981.25, which includes the unpaid purchase-money then owing on said sale, (*pro ut* the said inventory.) The whole of which said inventory is made part of this case.

The said J. Sewall Stewart was appointed guardian of the said Isaac, Margaret, Susannah, and George Walls, by the Orphans' Court of said county, on the 20th August 1849, who gave security on the 18th of September, 1849, agreeably to the order of the court.

If, on the above and foregoing state of facts, the court shall be of the opinion that the case is with the plaintiff, the judgment to be entered for the plaintiff for $600, with interest on $300 thereof from the 17th day of June, 1849, and interest on the remaining $300 from the 17th day of June, 1850; and if the court shall be of opinion that the case is with the defendants, then judgment to be entered for the defendants.

Y

[Walls *v.* Stewart.]

Each party reserves the right to take a writ of error.

Defendants' attorney objecting to the item of interest on the legacy as set forth and claimed in the above statement of the case, it is hereby agreed that the interest, if any, and what amount and when payable, shall b'e for the determination of the court upon the facts stated in this case, and made part of their opinion, if the said court shall be of opinion that the plaintiff is entitled to recover the legacy aforesaid, each party reserving a right to writ of error as aforesaid.

It was signed by counsel.

After preliminary matter, the first, sixth, seventh, and ninth items of the will of John Walls, the testator, were as follow :—

1st. I do order and direct that all my personal property (except what may hereinafter be otherwise disposed of) be sold by my executors at public sale, as soon after my decease as practicable, and also that all moneys due and owing to me be by them collected as soon as possible..

6thly. To each of my four daughters, Mary, Rebecca, Sarah, (intermarried with Jacob Walls,) and Elizabeth, (intermarried with John Jacobs,) I give and bequeath the sum of $600 ; the sums heretofore given by me to three of my said daughters to be reckoned as so much paid on the legacies now herein and hereby bequeated to them respectively and to be deducted therefrom, that is to say, $170 paid by me to my daughter Rebecca, to be retained and deducted out of the $600 dollars now bequeathed to her ; $387 paid by me to my daughter Elizabeth Jacobs, to be retained and deducted out of the $600 now bequeathed to her ; and $360 heretofore paid by me to my daughter Sarah Walls, to be retained and deducted out of the $600 now bequeathed to her ; the said legacies to be paid by my executors to my said daughters in three equal annual payments without interest, the first payment to be made in one year after my decease.

7thly. To Isabella Paxton and Juliann Paxton, children of my daughter Susannah Paxton, now deceased, I give and bequeath each $50, and to Aaron, Isaac, Azariah, and John Paxton, children of my said daughter Susannah, each the sum of $5 ; the said legacies to these my grand-children to be paid by my executors within one year after my decease.

9thly. It is my will, and I do order and direct that after the death of my beloved wife Susannah, all my household and other personal property, heretofore directed to be retained for the use of my said wife, shall be sold by my said executors ; and after all the legacies hereinbefore bequeathed, and all debts and expenses, including the expense of supporting with necessaries my said wife, shall be paid, I do order and direct that the balance and residue of my estate, if any, shall be equally divided amongst all my children, and the children of any that are or may be deceased, share

[Walls *v.* Stewart]

and share alike; the children of any that may be deceased to have divided amongst them the share that would fall to the parent, if living.

Lastly. I do hereby nominate, constitute and appoint my son, James Walls, and my daughter, Rebecca Walls, to be the executors of this my last will and testament.

April 19, 1851, judgment was rendered for plaintiff for $647.60.

It was assigned for error:

The court erred in giving judgment for defendants in error for the legacy of $600 with full interest, when, from the facts stated, and the law of the case, judgment should have been given for the plaintiffs in error.

The case was argued by *D. Blair*, for the executors, plaintiffs in error.—He contended that the legacy in question was charged on the land devised, and the land having been sold by the testator, the legacy *was adeemed*. The following authorities were cited: *Dunlop's Dig.* 1st ed. 521, sec. 59, act of 1834; 1 *Rop. on Legacies* 152, sec. 2; Downer *v.* Downer, 9 *Watts* 60–3; Cuthbert *v.* Cuthbert, 3 *Yeates* 486; Blackstone *v.* Blackstone, 3 *Watts* 335; Alsop's Appeal and Riley's Appeal, 9 *Barr* 374; Richardson *v.* Brown, 4 *Vesey* 377; *Ward on Legacies* 27, 21; 2 *Jarmin on Wills* (marginal page) 594; *Ram on Assets* 124; *Law Lib.* No. 22, April No. 1835, 84; Gettins *v.* Steele, 1 *Swans.* 24; Arnold *v.* Arnold, 1 *Brown's Ch. C.* 401; Bridges *v.* Phillips, 6 *Vesey* 571; Ashbruner *v.* Maguire, 2 *Brown's Ch. Rep.* 109; 1 *Rop. on Legacies* 151–2; *id.* 149; Walton *v.* Walton, 7 *Johns. Rep.* 258; Tole *v.* Hardy, 6 *Cow.* 333; Cryder's Appeal, 1 *Jones*, 72; Page *v.* Leapingwell, 18 *Vesey* 463; 2 *Freeman's Rep.* 21 and 24.

*J. S. Stewart*, with whom was *S. S. Wharton*, for defendants in error, contended that the legacy was not adeemed; that it should be declared to be demonstrative, that is, a legacy of so much money, and payable out of a particular fund.

The question in this case is, whether the legacy of $600 given by John Walls to the children of Joseph Walls is specific or demonstrative. If specific, it is adeemed by the sale made by the testator in his lifetime of the land or fund upon which it was charged. If demonstrative, it is payable out of his general estate; 1 *Rop.* 150.

A specific legacy is the bequest of *a particular thing*, so described by the testator in his will as to distinguish it from all other things in his possession. In this case there is no specific money or thing given to Joseph's children; but simply a general legacy of six hundred dollars, with the property devised to Eli charged with its payment. If specific at all, it must be so in con-

[Walls *v.* Stewart.]

sequence of a specified property being appropriated to bear that burden, and that in such way as to manifest an intention to give the very property, or part of the very property itself, or the proceeds, under a direction to sell.   Here no specified part of the farm devised to Eli was given as these children's legacy, or in lieu of it; neither were the proceeds of a sale of it, nor a rent issuing out of it, nor a term of which it was the subject,—which have been held to be specific.   It is merely a bequest of $600, *charged upon the land as a security for its payment*, without any intention manifested *to give the security itself*, or any part of it.   There is no adjudged case in which a legacy, considered one of quantity, with a fund, either real or personal, upon which its payment is merely charged, has been held to be specific; but such cases have been universally held to be *in the nature of specific* or *demonstrative*: 1 *Roper* 192–3. The land was to be merely subject to the payment, and it is not directed in the will that Eli shall pay it.

A demonstrative legacy is one of *mere quantity*, with a specific fund appropriated for its payment; the mention of the fund being considered rather by way of demonstration than of condition; rather showing how or by what means the legacy may be paid, than whether it shall be paid at all: *Ward on Legacies* 21, (margin;) 1 *Roper* 150.

A gross sum given out of a term or estate, considered demonstrative : 1 *Roper* 153–4; *Ram on Assets* 121, (marginal page.)   A legacy charged upon land is demonstrative : Saville *v.* Blacket, 1 *Peere Williams* 778–9; Hoover *v.* Hoover, 5 *Barr* 351–56; Fowler *v.* Willoughby, cited in 1 *Roper* 154.   Courts are desirous of constructing the bequests to be general : Walton *v.* Walton, 7 *Johns. C. Rep.* 263 ; Blackstone *v.* Blackstone, 3 *Watts* 339.

In the ninth item of the will, the testator directs, after the death of his wife, all his personal property to be sold, and after *all* the legacies thereinbefore bequeathed, &c. shall be paid, then disposes of the residue, which is an indication that the legacy in question is a general one.

A legacy to be paid by the devisee of a farm was held *not* specific : *Ward on Legacies* 29, (margin ;) Cotterell *v.* Chamberlain, *Bunbury's Rep.* 32.

The opinion of the court was delivered June 12, by

BELL, J.—As is truly said in Walton *v.* Walton, 7 *Johns. Ch. Rep.* 258, and elsewhere, in applying the doctrine of ademption, it is sometimes extremely difficult to perceive the distinction attempted to be kept up between specific, demonstrative, and general pecuniary legacies.   Many of the English cases rest upon points of difference so refined as often to baffle the most microscopic examination ; a subtlety referable to an anxious desire to treat bequests as general or demonstrative, wherever the slightest pretext can be

found for such a construction. This is particularly observable where a bequest is charged on or refers to a personal fund as the source of payment; of which the English books offer a large variety of perplexing instances, owing to the very general practice which there obtains of investing in stocks and other public securities. The courts are disinclined to recognise specific legacies, because of their liability to sink with the destruction of the thing bequeathed or the fund charged. But as it was obviously impossible to esteem as purely pecuniary many of the testamentary gifts which judges inclined to withdraw from the class of specific legacies, they were driven to borrow from the civilians a term thought to be descriptive of a species of donation holding a middle place between specific and pecuniary, the only kinds distinctly recognised when Swinburne wrote. They are called *demonstrative*, and, like general legacies, are gifts of mere quantity, but differ from these by being referred to a particular fund for payment. They are so far general, that if the particular fund be called in or fail, the legatees will be permitted to receive their legacies out of the general assets; yet so far specific as not to be subject to abatement, with general legacies, on a deficiency of assets. They are thus specific in one sense, and pecuniary in another; specific, as given out of a particular fund, and not out of the estate at large; pecuniary, as consisting only of definite sums of money, and not amounting to a gift of the fund itself, or any aliquot part of it, the mention of the fund being considered rather by way of demonstration than of condition—rather as showing how or by what means the legacy may be paid, than whether it shall be paid at all: Smith v. Fitzgerald, 3 *Vesey & B.* 2; *Ward on Legacies* 21. A familiar instance, given in the last book cited, is of a bequest of £10, *which J. S. owes to the testator:* when in truth J. S. does not owe any such money, the gift fails; but if he gives £10, and wills that the same be paid out of the money he has in a certain place, or out of a particular debt due to him, the devise is good, notwithstanding there should appear to be no money in the place or no such debt owing. The distinction seems to be this:—If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed though the fund totally fail. But where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific, and consequently liable to be adeemed by the alienation or destruction of the object. In this, as in other questions springing from the construction of wills, the intention of the testator is principally to be ascertained, and it is said to be necessary that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to constitute

[Walls *v.* Stewart.]

a legacy specific. If it be manifest there was a fixed and independent intent to give the legacy, separate and distinct from the property designated as the source of payment, the legacy will be deemed general or demonstrative, though accompanied by a direction to pay it out of a particular estate or fund specially named. Of the application of this principle, Mann *v.* Copland, 2 *Mad.* 223, is a pregnant example. There a testator bequeathed to his servant an annuity of £10 during life, to be paid out of the rents of a certain freehold, if the testator's brother would cancel a conveyance theretofore made of the freehold; if not, he directed £200 to be secured out of £2000, 5 *per cent.* Navy, in trust for the servant during life. The question was, whether the bequest was general or specific, for, if the latter, it could not take effect. Sir THOMAS PLUMER, V. C., determined, on the construction of the will, the legacy was not specific, for he thought the intention was clearly marked to give the legacy in every event : that it was not so connected with the fund as to fail if there was no such fund, it appearing there was *a fixed, independent, separate, and distinct* intent to give the legacy, the particular property out of which it was to be paid being a secondary thought. The determination was evidently influenced by the direction consequent upon the anticipated refusal of the testator's brother to cancel the prior conveyance of the freehold. In Long *v.* Short, 1 *P. Wms.* 403, where, excepting the feature just noticed, the disposition was similar, the determination was different. It was a bequest of £40 a year to B for life, *out of* the testator's chattel estate at R. and £10 a year to C for life, *out* of the same estate which he devised to D. And Lord Chancellor COWPER decreed these bequests to be specific, remarking that the devise of a rent-charge out of a term is as much a specific devise as if it had been of the term itself. The subsequent case of Creed *v.* Creed, 1 *Drury & Warren* 416, was decided by the House of Lords upon somewhat broader grounds. The testator gave an annuity or yearly rent-charge of so much for "life, charged upon and payable out of all my real and freehold estate and property, (except Ballynanty,) and I do hereby charge and encumber the same therewith, and also empower the annuitant to take all and every remedy for recovery thereof, as in cases of rent-service, as usual." He then gave several general legacies, irrespective of any particular fund for payment, and in a subsequent clause directed them to be paid out of his personal estate remaining after payment of debts ; and such part of such legacies as should remain unpaid out of the personal estate, was to be raised and paid by *his executors*, out of his real and freehold properties, (except Ballynanty,) "and I do hereby charge and encumber the same therewith." The judgment was delivered by Lord COTTENHAM, who said that the rule laid down by Lord HARDWICKE, in Lewin *v.* Lewin, 2 *Vesey, Sen.* 416, that all simple gifts of annuities are held to be pecuniary

[Walls v. Stewart.]

legacies, had no application to the gift of a rent-charge or annuity arising out of land, "for that is an *interest in the land itself*, and necessarily specific," and he accordingly decreed the annuities in question to be so.   But of the after given legacies he remarked that, though charged on the land on a deficiency of the personalty, it would not alter their character or make them specific; and he added, "general legacies do not, necessarily become specific, because they are payable out of the proceeds of real estate, but the gift of the proceeds of real estate may be specific, as in Page *v.* Leapingwell," 18 *Vesey* 463.

The principle of construction will be found the same where a gross sum is charged upon or directed to be paid out of the proceeds of realty.   If an intention is apparent to give the legacy at all events, though with reference to a fund for its payment, the legatees' remedy is not as of course confined to the fund adverted to.   This, indeed, is often considered as merely auxiliary in aid of the personal assets.   Of this class is Savile *v.* Blacket, 1 *P. Wms.* 778, where A, having a power of charging lands, (which power he afterwards destroyed) bequeathed to his child £1000 out of the lands, and also £1000 charged on the personal estate. The power to charge having failed, the question was whether the first bequest was not specific, and, therefore, a failure.   But Lord MACCLESFIELD, on the ground that the testator intended to give two sums of £1000 each, though one was directed to be paid out of the land, decreed that the failure of the *modus* appointed for payment should not defeat it.   This case can only be reconciled with prior and subsequent determinations, on the foot that the reference to the land chargeable under the power was for convenience, and secondary to the main intent.   In remarking upon it, Mr. *Roper*, in his treatise upon legacies, says the principle of the decision was the intention of the testator not to make the legacy dependent on the due execution of his power, but to bequeath a sum equivalent to what he was entitled to charge on the estate, with reference to that estate as the primary fund for the payment of it; and that such appeared to the court to be the testator's design, upon the construction of the whole will.   It is also said that Fowler *v.* Willoughby, 2 *Sim. & Stu.* 354 was ruled on the same principle.   It was a bequest of £1400, to be raised, for the benefit of the testator's two children, by the sale of an estate for which he had, just before, contracted.   After his death, it was found the contract could not be enforced against his assets; and the question arose, whether the legacy could take effect, though it could not be raised in the manner directed by the will?   Sir JOHN LEACH, declaring it was neither *legatum nominis* nor *legatum debiti*, but a pecuniary legacy with a particular security, directed that it should be paid out of the testator's general estate, as a demonstrative legacy.

Wilcox *v.* Rhodes, 2 *Russ.* 452, is another instance of the same

kind. The testator had given, with other legacies, £500 to the plaintiff for life, with remainder to her children, and added, "*I guaranty* my leasehold in, &c. for the payment of the above legacies." The leaseholds failed, and it was insisted, that being exclusively charged upon them, the legacies were specific. But the vice chancellor, and afterwards Lord ELDON, on appeal, held the legacies were general, and, consequently, charges on the general personal estate, the property particularly specified being merely an auxiliary fund in case the personalty should be found deficient. In the still more recent case of Newbold *v.* Roadknight, 1 *Russ. & M.* 677, Fowler *v.* Willoughby was cited by the eminent counsel who argued for the plaintiff, as ruling the question agitated in the principal case. It presented a devise of lands to trustees to sell, and, out of the proceeds thereof, to pay to A £1000, and to divide the residue among certain persons named. This was followed by a gift of other lands and of personal property, in trust to sell the same and divide the avails among the same persons. Afterwards, the testator sold and conveyed the land first devised. In answer to the argument I have noticed, Sir THOMAS PLUMER, in pronouncing the judgment, said, "The gift to one of a sum of money, part of the produce of real estate directed to be sold, followed by a gift of the residue of the purchase-money to others, is *substantially a gift of the estate, and not a gift of legacies with a collateral charge on the estate.* This distinguishes the present case from Fowler *v.* Willoughby, and the legacy to A is therefore adeemed."

This reasoning, it will be perceived, is in accordance with that which governed the determination in Creed *v.* Creed, and will, also, be found to harmonize with many other cases in the books, some of which I shall have occasion more particularly to notice. Indeed, I think an examination of the authorities, English and American, will show that wherever an intent is exhibited to make distribution of the value of lands, either by means of a sale and division of proceeds, or by the charge of a sum *in numero*, payable by the devisee of the land as a *quasi* partial purchase of the estate devised, the bequests are always treated as specific, and, consequently, liable to be adeemed by an alienation of the land in the lifetime of the testator. I may add, this is also true where the only gift of a legacy is found in the direction to pay it out of the land devised: 2 *Jarman on Wills* 593, and the cases there cited; or, as it is elsewhere expressed, where a testator charges his real estate with a sum of money, and then bequeaths the sum so charged: Dickin *v.* Edwards, 4 *Har.* 273; though it is commonly otherwise where there is a distinct bequest, afterwards generally charged on the lands of the donor.

Among the earlier illustrations of these rules of construction is an anonymous case, reported in 2 *Freem. Ch. Ca.* 21. It was there ruled, that if a man gives a legacy and charges it on Black

[Walls *v.* Stewart.]

acre, although this be not sufficient to answer the full value of the legacy, yet it shall not be charged on the personal estate. So, if one devises £100, *out* of a lease for years, and the lease be determined, yet the legatee shall never resort to the personal estate for this legacy. The same book (*Ca.* 124) furnishes us with the report of Colchester *v.* Lord Stamford, in which TREVOR held, that "if a man hath two daughters, and deviseth to one £1000 out of his real estate, and to another £1000 out of his personal estate, then if the real estate be evicted, that legacy is lost, and shall never come into average with the other on the personal estate." So far as I am informed, these determinations have never been called into question. On the contrary, they are frequently cited in other precedents, as furnishing authoritative ground upon which the inquirer may safely stand, and a basis for future decision. They have been followed by a multitude of others to the same effect. Of some of these I may be pardoned a particular notice, as affording reliable guides through the somewhat intricate mazes of this branch of our law. Among the first which present themselves, in point of time, is Whaley *v.* Cox, 2 *Eq. Ca. Abr.* 549. It was a devise of land charged with the payment of a legacy of £500, followed by this clause: "I have devised the said estate to my nephew Cox, on condition he pay the said £500." It was ruled by Sir JOSEPH JEKYLL that, though both the condition and devise were void, the devisee being the heir at law, yet, as these showed the intention of the testator, the land was liable in the first instance.

In Gittins *v.* Steele, 1 *Swan.* 24, a legacy of £7000 was charged upon certain freehold and leasehold estates, devised in trust to sell the same and pay the legacy out of the purchase-money. The testator afterwards sold some of the devised estates, and the sum produced by a sale of the remaining portion, after his death, was insufficient to pay the legacy. On a question made, whether the legatee was entitled to come in on the personal assets for the balance, Lord ELDON decided the personal estate was not subject to pay any part of it. "Legatees," said he, "as volunteers, are not entitled to resort to any other than the particular fund the testator or the law has assigned." "Entertaining no doubt that the intention of the testator has been frustrated by a subsequent sale of a part of his estates, I am not authorized to advert to that fact as affecting the construction of the will. I am bound, as a judge, to assume that the testator supposed he should leave, at his decease, freehold and leasehold estates sufficient for the payment of the legacy of £7000; and I protest as being understood to give my judgment on the ground of the subsequent sale. My duty is to apply the funds which, at his death, are applicable, by the operation of the will, to the payment of this legacy. If they are insufficient, the court, whatever may be the hardship of the case, cannot supply other funds." I have cited

these remarks somewhat at length, as furnishing an answer to the considerations of supposed hardship which, on the part of the defendant in error, were urged on us in argument.

Amesbury *v.* Brown, 1 *Vesey, Sen.* 481, is a striking instance of the same class. The testator devised his estate generally, after payment of his debts, but, in this part of the will, said nothing about legacies. Then followed bequests to his four sisters, and, in the same clause, he added, " all which legacies I mean shall be paid out of my freehold estate at N." It was insisted, for the devisee, that a legacy generally given is payable out of the personal estate, and though afterwards made a charge on the real, yet, as the heir is not likely to be disinherited, the court looks to it that unless the personalty is expressly exempted, the legacies shall be payable out of the latter assets. But Lord HARDWICKE answered, " This is not within the common rule, not being a common charge on the real, in aid of the personal, but an express encumbrance upon that estate; an express gift of the legacy out of the real estate, which, wherever done, the real must bear the burden.

Then followed Reade *v.* Litchfield, 3 *Vesey* 475. The will directed a term to be raised out of the testator's real estate, upon which he charged several sums in favor of his children *nominatim*. It was held, that as he intended these as a provision for his children, and a charge upon his real property *by way of distributing it among his family*, the personal estate was not applicable to their payment.

Spurway *v.* Glynn, 9 *Vesey, Jr.* 483, is to the same effect. There was a devise of estates in certain counties, (except the estate called Portledge,) subject to debts, funeral and testamentary expenses, and pecuniary legacies thereafter given. Then followed a devise of the Portledge estate, in trust to demise, sell, or mortgage the same, or out of the rents and profits, to make up the sum of £400, and pay the same to the plaintiff; and after payment thereof, and *subject thereto*, upon trust for J. P. for life, with remainder over. The testator then made specific bequests of chattels, and gave some pecuniary legacies, and directed the residue of his personal effects to be turned into money and applied in payment of his debts and legacies, in exoneration of his real estate; and if any thing remained of these proceeds, he gave it to the devisees of the first-named estate. Upon the intention of the testator, it was decreed by Sir WILLIAM GRANT that the £400 was a charge exclusively upon the Portledge estate, with the observation, " There is no direct bequest to the plaintiff of £400, but that sum is directed to be raised out of the particular estate and paid to him; and the general words at the close of the will clearly refer to the first devise, and were intended to exonerate the estates there charged."

These determinations but follow the earlier case of Ward *v.*

[Walls *v.* Stewart.]

Dudley, 2 *Bro. C. R.* 316. After a gift of certain real estate to the defendant, the testator proceeded, "I charge the last-mentioned estate with the payment, as well of the said sum of £5000, (a sum stipulated in a prior marriage settlement) as of the further sum of £5000," &c. The devisee insisted these sums were first payable out of the personal estate. But Lord THURLOW said "there was no ground for argument. This is, clearly, a *real devise ;* it is purely a gift out of the real estate, and cannot fall upon the personalty."

I shall notice but three other English cases, which, though occurring under wills containing directions to sell, proceed upon the same principles. They are, indeed, in that respect, like Gittins *v.* Steele. The first of them is Brydges *v.* Phillips, 6 *Vesey* 567. The devise was of all the testator's lands, in trust to sell so much thereof as might be 'deemed expedient, and with the proceeds, in the first place to pay debts, and in the next place to raise and pay to his half-sister £1000 ; and, in the last place, to pay to his wife £4000 ; with a devise over of all the residue of his unsettled real estate. Sir WILLIAM GRANT decreed these legacies a charge exclusively on the land devised, saying, "Legacies given, payable out of the real estate, must be paid out of the real estate, for there is no other fund. They have no existence but by the will, and must come out of the fund the testator points out."

The next case, Hancock *v.* Abbey, 11 *Vesey* 179, is very decisive of the grounds of distinction I have ventured to deduce from the authorities. It was a devise of all the testator's lands, upon trust to sell so much of the same as should be sufficient for after-mentioned purposes, and to apply the proceeds to discharge a mortgage of £3000, and to raise the sum of £2000, which he bequeathed to his two daughters, to be invested for their benefit ; his wife to have the usufruct of the residue of his real estate during life, and afterwards to go to his said daughters in fee. The residue of his personal estate, after payment of his debts, legacies, and funeral expenses, was given to his wife. Upon a question made whether the personal estate ought not to be called on for payment of the two sums of £3000 and £2000, in relief of the realty, it was insisted for the daughters, that a general charge on real estate, followed by a residuary bequest of personalty, does not exonerate the latter estate ; and besides, by this will, the personal assets were expressly subjected to debts and legacies. But the master of the rolls answered, he could not consider this as a general legacy ; for the sum is given only *as a part of the produce of the real estate.* The daughters, therefore, could claim it only in that shape.

The remaining case, drawn from the English Chancery, is Page *v.* Leapingwell, 18 *Vesey* 463, noticed in Creed *v.* Creed. Without

[Walls *v.* Stewart.]

here particularly stating its general features, it may suffice to say
it asserts the same doctrine which governed in the two last cases.

To these overruling authorities it is scarely necessary to add
any thing further than our own recent cases of Cryder's Appeal,
1 *Jones Rep.* 72, and Balliot's Appeal, 2 *Harris* 451.   The first
of these arose under a direction to sell and apply the proceeds of
realty in discharge of certain legacies bequeathed; and the last
was a devise of land, *subject* in the hands of the devisees to the
payment of a certain aggregate sum, given by the same will to
named legatees.   In both it was ruled the legacies were specific,
and in the latter that they were adeemed by sale of the land
charged, by the testator in his lifetime.   Although, in delivering
the judgment in the last case, some stress is laid upon features
peculiar to the will, it is obvious both determinations are based on
the doctrine I have brought to view, that although a legacy is not
necessarily *specific,* because referred to a particular fund as a means
of payment, yet, if it be not only charged on real estate, but de-
ducted from its value in the hands of the devisee, the legatee is
confined to that fund alone.

Downer *v.* Downer, 9 *Watts* 63; S. C. 9 *Barr* 302; Lobach's
case, 6 *Watts* 167; Shickler *v.* Shaeffer, 5 *Barr* 440; Read *v.*
Read, (in note to last case;) Hoover *v.* Hoover, 5 *id.* 351; Milten-
berger *v.* Schlegel, 7 *id.* 241; Mohler's Appeal, 8 *id.* 27, and
Schaeffer's Appeal, *id.* 38, all point in the same direction.   They
all proceed upon the ground that a legacy directly charged upon
land devised is payable out of the land alone, or personally by the
devisee, who by accepting the thing devised makes himself respon-
sible; and that the remedy is in the Orphans' Court, against the
devisee, or other holder of the estate, without reference to the exe-
cutor named in the will, who, as such, has no interest in the sub-
ject of controversy.

By the will before us, the legacy here sought to be recovered is
directly charged upon the land devised to Eli Walls, to be paid by
him as devisee, in respect of the devise, and as a means of distri-
bution among the testator's children.   It was regarded by the de-
visor as the sole source of payment, and therefore, according to the
cases I have passed in review, the sale of the principal thing by
the testator destroyed its accessory, the legacy.   The sale may
have frustrated the intention entertained in favor of the plaintiff
below, but however we may regret this, we can but repeat the de-
claration of Lord ELDON, in Gittins *v.* Steele, that it is not in the
power of the court to supply other means of payment than those
pointed to by the creator of the intended gift.

Something was said, in the argument, of a supposed efficacy
found in the ninth clause of the will, to save the legacy in ques-
tion.   But it is perfectly obvious that the words there used, "after

[Walls *v.* Stewart.]

*all* the legacies hereinbefore bequeathed," have reference only to the pecuniary legacies just before given in the sixth and seventh clauses of the will. A similar direction occurred in Brydges *v.* Phillips, (*supra*,) and was construed in the same way.

As our conclusions are adverse to the plaintiff below, the judgment rendered on the case stated, by the Court of Common Pleas, must be reversed, and judgment entered here for the defendants below.

Judgment accordingly.